IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MAURICE HARDY,

*Petitioner,*

v.

UNITED STATES OF AMERICA,

*Respondent.*

Civil Action No.: ELH-14-3622
Criminal No.: ELH-11-358

## MEMORANDUM

This Memorandum resolves a motion filed by Maurice Hardy pursuant to 28 U.S.C. § 2255 (ECF 440), which is supported by a memorandum.   ECF 440-1 (collectively, the "Petition").   Hardy is self-represented.

In 2013, pursuant to a plea agreement (the "Plea Agreement"), Hardy entered a plea of guilty to conspiracy to distribute and possession with intent to distribute one kilogram of heroin, five kilograms or more of cocaine, and a quantity of cocaine base, in violation of 21 U.S.C. § 846.  *See* ECF 306; ECF 309; *see also* ECF 447-3.  The Plea Agreement (ECF 309; ECF 447-3) reflects that Hardy's plea was entered pursuant to Fed. R. Crim. P. 11(c)(1)(C) (*id.* ¶ 5), in which the parties agreed to a sentence of 16 years' imprisonment (192 months).  *Id.* ¶ 10. Consistent with the "C plea," Hardy was sentenced on May 14, 2013, to a term of imprisonment of 192 months.  ECF 334; ECF 335; ECF 349.

Hardy filed his Petition in November 2014.  In particular, Hardy argues that he received ineffective assistance of counsel from the two attorneys who represented him at various times. ECF 440; ECF 440-1.  The government filed a response in opposition (ECF 447, "Opposition"),

accompanied by six exhibits.  ECF 447-1 through ECF 447-6.[1]  Hardy did not reply, and the time to do so has expired.  *See* Local Rule 105.2.[2]

Under 28 U.S.C. § 2255(b), a hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."  This is such a case; no hearing is necessary.  For the reasons that follow, I shall deny the Petition.

## I.  Factual and Procedural Background

In a Superseding Indictment filed on September 14, 2011 (ECF 44),[3] Hardy and eight others were charged, *inter alia*, with conspiracy to distribute and possession with intent to distribute one kilogram or more of heroin, five kilograms or more of cocaine, and a quantity of cocaine base, in violation of 21 U.S.C. § 841(a)(1).  *Id.*  On September 20, 2011, Hardy and his retained lawyer, David Henninger, engaged in a "reverse proffer" session with the government, at which the government summarized its evidence against Hardy.  ECF 447 at 2.  According to the government, that evidence included intercepted telephone calls and text messages from two

---

[1]  By Order of February 25, 2015 (ECF 448), I granted the government's "Motion to Seal" (ECF 446) its Opposition (ECF 447) and accompanying exhibits (ECF 447-1 through ECF 447-6).

[2]  On August 8, 2016, the Clerk docketed a "Motion to Strike Indictment; Vacate Indictment, Conviction and Dismiss for Fraud on Court" (the "Motion to Strike").  ECF 492.  It includes exhibits and largely reiterates Hardy's allegations that he received ineffective assistance of counsel.  *Id.* at 3, 4, 5.  The government has not responded, and I do not address this submission here.

Hardy also filed a motion to reduce sentence, pursuant to 18 U.S.C. § 3582(c)(2).  ECF 470.  The government opposed that motion (ECF 474) and Hardy replied.  ECF 485.  By Order of July 12, 2016, I denied the motion to reduce sentence.  ECF 486.  My reasons are set forth in ECF 488.  Hardy has filed an appeal from my ruling (ECF 489), which is pending in the Fourth Circuit.

In my view, the pendency of the appeal as to the motion to reduce sentence does not deprive this Court of jurisdiction with respect to the Petition.  This is because the Petition is instituted and docketed as a separate civil case, even though matters pertaining to it are docketed in the original criminal case.

[3]  The original Indictment (ECF 1) was filed a few months earlier, on June 29, 2011.

of Hardy's telephones as well as 1.027 kilograms of cocaine seized from Hardy's vehicle following a traffic stop on June 29, 2011. *Id.* In addition, a loaded firearm was recovered from Hardy's residence. *See* ECF 309 at 12.[4] The government also disclosed information that Hardy was responsible for the shooting of an associate. ECF 447 at 3.

Eventually, plea negotiations "broke down." *Id.* On August 20, 2012, Henninger filed a "Motion to Strike Appearance." ECF 230. He said, in relevant part, *id.*: "Per the request of the defendant, please strike the appearance of David P. Henninger, Esquire, as counsel in the above caption[ed] case. The defendant [h]as notified this office his has [sic] already sought alternative counsel to represent him in the above caption case." Thereafter, by Order of August 20, 2016 (ECF 232), I referred the "Motion to Strike Appearance" (ECF 230) to a magistrate judge to conduct an attorney inquiry hearing. *See* ECF 231.

An attorney inquiry hearing was held on August 21, 2012. *See* ECF 250 at 1. By Order of August 21, 2016 (ECF 233), then Magistrate Judge Paul Grimm granted the "Motion to Strike Appearance" (ECF 230), contingent upon the entry of a new attorney for Hardy. However, Hardy did not retain new counsel. Therefore, in a letter to counsel of November 30, 2012 (ECF 257), I indicated that a second attorney inquiry hearing was warranted. And, on December 5, 2012, Henninger filed a second "Motion to Strike Appearance." ECF 259. It stated, in relevant part, *id.* at 1:

> Per the request of the Defendant, please strike the appearance of David P. Henninger, Esquire, as counsel in the above caption[ed] case and for reason says:
>
> 1. The Defendant has been represented by this office for more than a year. This office engaged in very fruitful negotiations, early on in this case. The defendant was unhappy with the representation when he learned of a possible homicide charge.

---

[4] Additional information is set forth in ECF 447, but it need not be detailed here.

2. That the Defendant has refused to cooperate with counsel over the last six (6) months, and all efforts to cooperate on counsel's part have been futile.

3. The Defendant is receiving legal advice from the Inner City Legal Services, out of Baltimore City, who are not lawyers and do not understand the Defendant's case nor the law. At his time said organization is under investigation by the Baltimore City State's Attorney's Office for practicing without a license.

4. Any further efforts to represent the Defendant are not likely to be productive, and his right to a trial counsel of his choice has been seriously jeopardized.

5. This office has referred the Defendant to Donna Shearer for appointment for counsel, and has yet to return the petition for counsel to Ms. Shearer.[5]

By Order of December 5, 2012 (ECF 261), the case was referred to Magistrate Judge Gesner for a second attorney inquiry hearing. By Order of December 13, 2012 (ECF 264), Judge Gesner granted the second "Motion to Strike Appearance." ECF 259. Soon after, Thomas Saunders, a panel attorney under the Criminal Justice Act ("CJA"), was appointed to represent Hardy. *See* ECF 265; ECF 271.

Over the next three months, Saunders negotiated the Plea Agreement with the government on behalf of Hardy. ECF 447 at 4; *see* ECF 309; ECF 447-3. Pursuant to that Plea Agreement (ECF 309), Hardy tendered a plea of guilty on March 19, 2013, to Count 1 of the Superseding Indictment, under Fed. R. Crim. P. 11(c)(1)(C). *Id.* The Plea Agreement included as "Attachment A" a lengthy factual stipulation. *Id.* at 9-12. The factual stipulation set forth, *inter alia*, Hardy's narcotics transactions with his co-defendants; that law enforcement officers recovered a loaded 9mm Glock pistol and 9mm ammunition from Hardy's residence; and that Hardy and his co-conspirators distributed more than 15 kilograms of cocaine, more than a kilogram of heroin, and a quantity of cocaine base, and this conduct was foreseeable to Hardy.

_____

[5] At the time, Ms. Shearer handled the appointment of Criminal Justice Act Panel attorneys for this Court.

*Id.* at 9-12.  In addition, the stipulation provided that during June 2011, Hardy discussed on the telephone the shooting at a vehicle in Salisbury, Maryland.  *Id.* at 12.

Paragraph 3 of the Plea Agreement set forth the maximum possible penalties for the offense in issue.  The offense to which Hardy pleaded guilty carried a mandatory minimum term of imprisonment of ten years and a maximum term of life imprisonment.  *Id.*

In the Plea Agreement, Hardy and the government stipulated that "a sentence of imprisonment of **16 years** is the appropriate disposition of this case."  *Id.*  ¶ 10 (bold in original).  The parties also stipulated to the calculation of Hardy's offense level under the United States Sentencing Guidelines ("U.S.S.G.").  Under U.S.S.G. § 2D1.1(c)(3), they agreed that Hardy's base offense level was 34, based on the quantity of narcotics.  *Id.* ¶ 7.  Two levels were added under U.S.S.G. § 2D1.1(b)(1), because of Hardy's possession of a dangerous weapon in connection with the conspiracy.  *Id.*  And, Hardy earned three deductions for acceptance of responsibility.  *Id.  See* U.S.S.G. §§ 3E1.1(a), (b).  Thus, Hardy had an anticipated final offense level of 33.  However, there was no agreement as to Hardy's criminal history.  *See* ECF 309, ¶ 9; ECF 447-3, ¶ 9.

At the rearraignment, the government made an oral presentation of the stipulated facts, in which it recounted, *inter alia*, defendant's involvement in the shooting at a vehicle.  *See* ECF 397 (guilty plea transcript) at 33-34.  Hardy, who was under oath (*id.* at 3), was asked if he had any dispute with the factual summary.  *Id.* at 34.  He indicated that he did not dispute the factual summary and acknowledged that it was accurate.  *Id.*

The Presentence Report (ECF 324) reflected that Hardy had a criminal history category of V.  *See id.* ¶ 48.  With a final offense level of 33 and a criminal history category of V, Hardy had an advisory sentencing guidelines range of 210 to 262 months' incarceration.

Notably, the shooting referenced in the stipulation of facts contained in the Plea Agreement, and recounted at the rearraignment, was not included in the agreed-upon calculation of Hardy's adjusted offense level under the sentencing guidelines.   Had the shooting been incorporated, the government could have pursued an additional two-level enhancement under U.S.S.G. § 2D1.1(b)(2), on the ground that Hardy used or directed the use of violence.   If this enhancement applied, Hardy's final adjusted offense level would have been 35, not 33.   And, this would have resulted in an applicable guidelines sentencing range of 262-327 months' imprisonment, assuming a Criminal History Category of V, as found at sentencing.

Thus, the C plea of 16 years (*i.e.*, 192 months) was 18 months below the bottom of the advisory guidelines range and 70 months below that top of the range.   And, it was well below the advisory sentencing range of 262 to 327 months' imprisonment, which would have applied if the shooting incident had been included in the calculation of the offense level.

After sentencing, Hardy noted an appeal to the Fourth Circuit.   *See* ECF 357; ECF 358; ECF 362; ECF 363.   The Fourth Circuit dismissed Hardy's appeal as to his sentence, based on a valid appellate waiver.   *See United States v. Hardy*, 555 Fed. App'x 272 (4th Cir. 2014) (per curiam) (ECF 413).   But, the Court determined that the waiver did not extend to the issue of the voluntariness of his guilty plea.   *Id.* at 273.   Nevertheless, it concluded that "[t]he district court fully complied with Rule 11 when accepting Hardy's plea and ensured that the plea was knowing and voluntary and, therefore, final and binding."   *Id.*   Of relevance here, the Court declined to address on direct appeal Hardy's appellate claim of ineffective assistance of trial counsel.   *Id.*

## II.  Discussion

### A.  The Legal Standard

Section 2255(a) of Title 28 of the United States Code, under which Hardy filed his Petition, provides relief to prisoners in federal custody only on specific grounds: that the sentence was imposed in violation of the Constitution or laws of the United States; that the court was without jurisdiction to impose such a sentence; that the sentence was in excess of the maximum authorized by law; or that the sentence is otherwise subject to collateral attack.  In reviewing the Petition, the Court is mindful that a self-represented litigant is generally "held to a 'less stringent standard[ ]' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled."  *Morrison v. United States*, Crim. No. RDB-10-0507; 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 Fed. App'x. 332, 334 (4th Cir. 2013) (same).

Hardy contends that his Sixth Amendment rights were violated because he received "[i]neffective assistance of counsel in violation of federal constitution's 6TH. amendment under STRICKLAND V. WASHINGTON, 104 S.Ct 2052 . . . ."  ECF 440-1 at 5; *see* ECF 440 at 5-6. The Sixth Amendment's right to effective assistance of counsel is a well recognized basis for relief under § 2255.  *See generally Missouri v. Frye,* ___ U.S. ___, 132 S.Ct. 1399 (2012); *Lafler v. Cooper*, ___ U.S. ___, 132 S.Ct. 1376 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).  To challenge successfully a sentence of imprisonment under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong

test set forth in *Strickland v. Washington,* 466 U.S. 668, 687–88 (1984).  *See Chaidez v. United States,* ___ U.S. ___, 133 S.Ct. 1103, 1107–8 (2013); *Roe v. Flores-Ortega,* 528 U.S. 470, 477 (2000); *Lafler,* 132 S.Ct. at 1384; *Hill v. Lockhart,* 474 U.S. 52  (1985); *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs,* 663 F.3d 726, 735 (4th Cir. 2011); *see, e.g., United States v. Baker,* 719 F.3d 313, 318 (4th Cir. 2013).

First, the petitioner must show that his attorney's performance fell "below an objective standard of reasonableness," measured by "prevailing professional norms."  *Strickland,* 466 U.S. at 688.  This is known as the "performance prong," which relates to professional competence.  The burden is on the petitioner to establish "'that counsel made errors so serious that "counsel" was not functioning as the 'counsel' guaranteed by the Sixth Amendment.'"  *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (quoting *Strickland*, 466 U.S. at 687).

The performance prong is "'difficult'" to establish.  *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison,* 389 F.3d 450, 457 (4th Cir. 2004)).  "Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  *Lawrence*, 517 F.3d at 708 (quoting *Strickland,* 446 U.S. at 689); *see Harrington*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015).  Indeed, "the *Strickland* standard must be applied with scrupulous care," *Harrington*, 562 U.S. at 105, and "the standard of judging counsel's representation is a most deferential one."  *Id.*  The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  *Harrington*, 562 U.S. at 88 (quoting Strickland, 466 U.S. at 690).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687.  To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings.  *Id.*[6]

What the *Padilla* Court said, 559 U.S. at 371, is apt:  "Surmounting *Strickland's* high bar is never an easy task."  Accordingly, a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt."  *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."  *Id.* at 697.  Nor must a court address both components if one is dispositive.  *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015).  Failure to satisfy either prong is fatal to a petitioner's claim.  As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Strickland*, 466 U.S. at 697.

In the case at bar, Hardy entered into the Plea Agreement with the government, by which he pleaded guilty to one count of a multi-count indictment.  In *Hooper v. Garraghty*, 845 F.2d 471 (4th Cir. 1988), the Fourth Circuit described a defendant's burden in the context of a post-guilty plea claim of ineffective assistance of counsel.  The Court said, *id.* at 475 (quoting *Hill v.*

---

[6] The Sixth Amendment guarantee to effective assistance of counsel also applies to an appeal.  *See, e.g., Halbert v. Michigan*, 545 U.S. 605 (2005); *Evitts v. Lucey*, 469 U.S. 387 (1985).  The proper standard for evaluating a claim of ineffective assistance of appellate counsel is that enunciated in *Strickland*.  *See Smith v. Murray*, 477 U.S. 527, 535-36 (1986) (applying *Strickland* to claim of attorney error on appeal).

*Lockhart*, 474 U.S. at 59): "When a defendant challenges a conviction entered after a guilty plea, [the] 'prejudice' prong of the [*Strickland*] test is slightly modified.  Such a defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"  *Accord Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1294-99 (4th Cir. 1992).  Moreover, when, as here, a defendant claims ineffective assistance of counsel after pleading guilty, the defendant is "bound," absent clear and convincing evidence to the contrary, "by the representations he made under oath during a plea colloquy." *Fields*, 956 F.2d at 1299; *see Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977).

In *Hill*, 474 U.S. 52, the Supreme Court explained that "where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness [and intelligence] of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  *Id.* at 56 (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  In assessing whether counsel's performance was deficient, courts adopt a "strong presumption" that counsel's actions fell within the "wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.

In *Hooper*, 845 F.2d 471, the defendant had a history of mental illness.  He entered a plea of guilty to second-degree murder.  *Id.* at 472.  However, his lawyers failed to obtain a psychiatric evaluation before the defendant's entry of the guilty plea.  *Id.*  The Fourth Circuit noted that the "burden is on Hooper to establish a reasonable probability that if his lawyers had obtained a psychiatric report, he would have rejected the plea agreement" and gone to trial.  *Id.* at 475.

The Fourth Circuit examined a psychiatric report obtained after the guilty plea against the background of the circumstances Hooper faced at the time he decided to plead guilty.  It was not

persuaded that the report provided evidence sufficient to establish a reasonable probability that Hooper would have declined the plea agreement and gone to trial, even if his counsel had obtained a psychiatric report at the time. *Id.* at 475-76. Although the Court concluded that the failure to obtain a psychiatric report fell below the objective standard of reasonableness established by *Strickland*, it was satisfied that Hooper was not prejudiced because there was no reasonable probability that the deficiency changed the outcome of the proceeding. *Id.*

With this background, I turn to Hardy's claims.

### B.  Hardy's Ineffective Assistance of Counsel Claims

### 1.  Claim as to Henninger

Hardy alleges that his first attorney, David Henninger, created a "conflict issue" because Henninger was "secretly deal[ing] with the government" (ECF 440-1 at 2) and "went behind the Movant's back exposed some of the defenses case [sic] and also told the A.U.S.A., that he would get the Movant on board with their agenda, which was to cooperate with them." *Id.* at 3.

To demonstrate that a conflict of interest resulted in ineffective assistance of counsel, a petitioner must satisfy the two-part test articulated in *United States v. Nicholson*, 475 F.3d 241, 249 (4th Cir. 2007). To "establish that a conflict of interest resulted in ineffective assistance, '[m]ore than a mere possibility of a conflict . . . must be shown.' The petitioner must show (1) that his lawyer was under 'an actual conflict of interest' and (2) that this conflict 'adversely affected his lawyer's performance.'" *Id.* at 249 (citations omitted and alterations in original); *see Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).

The allegations do not support the finding that Henninger's conduct created an actual conflict of interest or otherwise met the conditions set forth in the first prong of *Strickland*. The notion that Henninger "went behind [Hardy's] back" is refuted by the fact that Hardy attended the

reverse proffer session, at which the government disclosed its evidence.   Moreover, as the government points out, ECF 447 at 10, "Hardy fails to specify whose interest, other than his own, Henninger represented in discussing a potential [plea] deal with the government."

Conflicts of interest are not created merely because a defense attorney interacts with the prosecutor.   Defense counsel, in the course of properly representing a criminal defendant, generally *must* communicate with the prosecutor to achieve the best results for a client.[7]   The government correctly observes, ECF 447 at 10:

> Hardy appears to be arguing that a lawyer has (or creates) an actual conflict simply by listening to (and discussing) an offer by the government that would potentially benefit his client by reducing his client's exposure at sentencing. This is not the law; if it were, defense attorneys would be hamstrung in terms of their ability to identify and explore favorable opportunities for their clients. Indeed, the law seems to indicate that, where such an opportunity is presented, a lawyer is obligated to define and discuss its parameters so that his client can fairly consider it.  *Cf. Missouri v. Frye*, 132 S.Ct. 1399, 1408 (2012) ("[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused.").

Moreover, "Hardy does not allege . . . that Henninger was required to 'account to two masters,' or that he failed to take action on behalf of one client because it would adversely affect another" by discussing a potential plea deal with the government.  ECF 447 at 10 (citing *United States v. Tatum*, 943 F.2d 370, 375 (4th Cir. 1991)).  Beyond Hardy's conclusory allegation of collusion, he does not make any argument identifying that Henninger labored under a conflict of interest.

Even assuming that an actual conflict existed, there is no evidence that it adversely affected Henninger's performance. To establish an adverse effect, Hardy must satisfy a three-part standard, by a preponderance of the evidence:

---

[7] This is so widely understood that the American Bar Association's Model Rules of Professional Conduct, assuming that such discussions will happen, requires counsel to "promptly inform" a client of every proffered plea bargain.  ABA Model Rule 1.4, *comment* 2.

1)      Hardy must "'identify a plausible alternative defense strategy or tactic that his

defense counsel might have pursued.'"

2)      He "must establish that 'the alternative strategy or tactic was objectively

reasonable under the facts of the case known to the attorney at the time of the

attorney's tactical decision.'"   To satisfy this requirement, Hardy "must show

'that the alternative strategy or tactic was "clearly suggested" by the

circumstances.'"

3)      Hardy must demonstrate that "'the defense counsel's failure to pursue that

strategy or tactic was linked to the actual conflict.'"

*Nicholson*, 475 F.3d at 251-52 (quoting *Mickens v. Taylor*, 240 F.3d 348, 361 (4th Cir. 2001) (en

banc)).

In any event, Hardy was not prejudiced.  He obtained new counsel before he entered a

guilty plea.  His new lawyer negotiated a C plea to a sentence well below the bottom of the

advisory sentencing guidelines range, and that range did not include an enhancement that readily

could have been applied.

In sum, the facts do not support a finding that Henninger's performance in representing

Hardy fell below an objective standard of reasonableness.  Nor do the facts demonstrate

prejudice.  Therefore, Hardy's Sixth Amendment right to the effective assistance of counsel was

not violated by Henninger's representation.

### 2.   Claim as to Saunders

Hardy's claims with respect to his second attorney, Thomas Saunders, also lack merit.

Hardy asserts, ECF 440-1 at 5:

The second counsel became ineffective when he did not investigate any element
of my case because had he done so, he would have known that the plea put

- 13 -

forward by the government was in excess by at least 3 or 4yrs, and further why did Movant's counsel fail to advise the Movant he could have pled guilty openly and keep all his rights.  Counsel never advised the Movant about any other type of pleas, never even talked about that issue.

Hardy seems to present three categories of allegations of ineffective assistance of counsel as to Saunders.

First, Hardy complains that Saunders failed to inform him of other options concerning pleading guilty.  In particular, Hardy claims that Saunders failed to advise him that he could have proceeded with an open plea, by which he would have retained all of his appellate rights.  ECF 440-1 at 5.[8]  Second, Hardy contends that Saunders "never really advised . . . that he was entering into a stipulated plea under Rule 11(C)(1)(C) [sic]."  ECF 440-1 at 2.  And third, Hardy complains that Saunders failed to investigate his case adequately, resulting in a plea agreement that included a term of incarceration three to four years longer than it should have been.  *See* ECF 440-1 at 2, 5, 8.

In considering Hardy's first claim of ineffective assistance, the Supreme Court's decision in *Missouri v. Frye*, 132 S.Ct. 1399 (2012), provides some guidance.  In *Frye*, the Court articulated a three-part test "[t]o show prejudice where a plea offer has lapsed or been rejected because of counsel's deficient performance . . . ."  *Id.* at 1409.  A petitioner must show "a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel"; "a reasonable probability that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it;" and, "a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."  *Id.*

---

[8] In his Motion to Strike, Hardy asserts: "On March 19, 2013, Defendant exercised a written Rule 11 Plea Agreement based solely on the advice of a corrupted, compromised, cooperating with government, abandoned defense counsel."  ECF 492 at 4.

Notably, Hardy does not allege that he would have entered an open guilty plea had he known that the option was available.  And, it is likely that such a plea would not have yielded a final offense level of 33, for reasons set forth earlier.  As the government points out, in the absence of the Plea Agreement, it could have sought an additional two-level enhancement "on account of the fact that Hardy was caught on a wiretap informing a co-conspirator that he had paid a third party to carry out a shooting."  ECF 447 at 15.  Indeed, that conduct was part of the stipulated facts.  Had the Court accepted that enhancement, the advisory sentencing guidelines range would have increased to 262 to 326 months of imprisonment, without a commitment by the government as to a specific, known recommendation of a sentence below the guidelines range.

I agree with the government that "Hardy cannot credibly argue that he would have chosen an open guilty plea instead of a 192-month c plea.  Hardy has failed, therefore, to demonstrate prejudice under *Frye*."  ECF 447 at 15.

Hardy also claims that he was "never really advised . . . that he was entering into a stipulated plea under Rule 11(C)(1)(C) [sic]."  ECF 440-1 at 2.  This claim is directly contradicted by Hardy's own sworn statements during his rearraignment.  Under oath and on the record, Hardy responded "Yes" when asked by the Court, regarding the signed plea agreement, as follows:

> And right above your signature, sir, it says in part, "I have read this agreement and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the factual advisory guideline stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney." Is that a true and accurate statement?

*See* ECF 397 at 7.  Hardy also answered "Yes" when asked:  "And have you actually read this plea agreement?" and "[H]ave you discussed it with your lawyer?"  *Id*. at 8.  Hardy has not alleged that these statements were either inaccurate, involuntary, or coerced.

The transcript of the rearraignment also reflects that Hardy had reviewed every part of his Plea Agreement and discussed the case fully with Saunders.  *Id.* at 6-7.  He told the Court that he had discussed the Plea Agreement with Saunders; that Saunders had answered all of his questions; and that he had no complaints regarding Saunders's representation of him.  *Id.*  Hardy has presented no evidence that these representations were either untruthful or involuntary, "and he is therefore rightly bound by his sworn statements."  *Fields*, 956 F.2d at 1299.

Hardy also contends that Saunders failed to investigate the case adequately and thus the agreed-upon sentence was too long.  Yet, Hardy fails to identify any facts supporting the veracity of this assertion.  I agree with the government that the sentence of 16 years "was actually quite generous under the circumstances . . . given the quantity of cocaine and heroin that Hardy conspired to distribute; given the fact that officers found a loaded gun in his home; given the fact that he admitted paying a third party to carry out a shooting . . . ."  ECF 447 at 16.

In sum, none of the three arguments that Hardy advances with reference to the performance of his second attorney successfully demonstrates that Saunders's performance was constitutionally inadequate or that Hardy was prejudiced as a result.

### III. Conclusion

For the foregoing reasons, I shall deny Hardy's "Motion under § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (ECF 440).  A Certificate of Appealability shall not issue.  A separate Order follows, consistent with this Memorandum.

Date: September 16, 2016                        _____/s/_____

                                                Ellen Lipton Hollander
                                                United States District Judge