IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

MAURICE HARDY,
*Defendant*

Criminal Action No. ELH-11-358

**MEMORANDUM**

On May 21, 2020, Maurice Hardy, through counsel, filed an "Emergency Motion For Compassionate Release Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i)." ECF 577. The motion is supported by a memorandum of law (ECF 579) (collectively, the "Motion") and eight exhibits. ECF 579-1 to ECF 579-8. The government has responded (ECF 582) and submitted one exhibit. ECF 582-1. Hardy filed a reply. ECF 585. The Court subsequently received correspondence from the defendant. *See* ECF 587.

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall grant the Motion.

**I. Background**

On June 29, 2011, a grand jury sitting in the District of Maryland returned an indictment against Hardy and two others, charging them with conspiracy to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.SC. § 846. ECF 1. A four-count Superseding Indictment was filed on September 14, 2011, against Hardy and eight others. ECF 44. As to Hardy, he was charged in Count One with conspiracy to distribute one kilogram or more of heroin, five kilograms or more of cocaine, and an unspecified quantity of cocaine base, in violation of 21 U.S.C. § 846. *Id.* Count Two charged Hardy with possession with intent to distribute 500 grams or more of cocaine on June 29, 2011, in violation of 21 U.S.C. § 841(a)(1). *Id.*

Pursuant to a Plea Agreement (ECF 309), Hardy entered a plea of guilty on March 19, 2013, to Count One of the Superseding Indictment. ECF 306. The plea was tendered pursuant to Fed. R. Crim. P. 11(c)(1)(C), by which the parties agreed to a term of 192 months' imprisonment as the appropriate disposition. *Id.* ¶ 10.

The Plea Agreement included a factual stipulation. *See* ECF 309 at 9-12. According to the stipulation, from 2009 through June 29, 2011, Hardy conspired with others to distribute heroin, cocaine, and cocaine base. *Id.* A search of the defendant's residence on June 29, 2011, led to the recovery of a loaded 9mm Glock handgun, ammunition, and over $10,000 in U.S. currency. *Id.* at 12. Moreover, defendant admitted that it was foreseeable to him that he and his co-conspirators would distribute more than 15 kilograms of cocaine and more than one kilogram of heroin. *Id.* ¶ 12.

In addition, through authorized wiretaps, defendant was heard on June 25, 2011, discussing an impending shooting. *Id.* ¶ 20. About an hour after that call, shots were fired outside of the target's residence in Salisbury, Maryland, and a vehicle was struck multiple times. *Id.*

According to the Presentence Report ("PSR," ECF 324), Hardy had a final offense level of 33. *Id.* ¶ 33. And, he had a Criminal History Category of V. *Id.* ¶ 48. Accordingly, Hardy's advisory guidelines called for a sentence ranging from 210 to 262 months of incarceration. *Id.* ¶ 58. Also relevant here, the PSR notes that Hardy weighed approximately 260 pounds and reported taking medication for high blood pressure and high cholesterol. *Id.* ¶ 70.

Sentencing was held on May 14, 2013. ECF 334. Pursuant to the Plea Agreement, the Court sentenced Hardy to 192 months' imprisonment. ECF 335 (Judgment); ECF 349 (Amended Judgment). The sentence dates to defendant's arrest on June 29, 2011. ECF 324 at 1.

By Order of July 12, 2016 (ECF 486), this Court denied defendant's first motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 to the United States Sentencing Guidelines. ECF 470. Thereafter, the Court denied Hardy's Motion to Vacate (ECF 440) by Memorandum and Order of September 16, 2016. ECF 496; ECF 497. Hardy filed a second motion for a reduced sentence pursuant to Amendment 782 on April 17, 2019. ECF 553. By Order of May 10, 2019, the Court reduced Hardy's sentence from 192 months to 168 months' imprisonment. ECF 561.

Defendant is now 44 years of age. ECF 579-2. He has served about 110 months of his sentence, *i.e.*, more than nine years. Hardy is presently incarcerated at the minimum-security satellite camp at FCI Schuylkill in Pennsylvania. ECF 579 at 2. He has a projected release date of September 8, 2023. ECF 579-8.

On April 3, 2020, Hardy requested compassionate release from the Warden of FCI Schuylkill. ECF 579-6. The request was denied on April 16, 2020. ECF 582-1. Thereafter, on May 21, 2020, Hardy, through counsel, asked this Court for compassionate release. ECF 577.

Additional facts are included, *infra*.

## II. Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i)

provides a statutory vehicle to modify a defendant's sentence. Section 3582 was adopted as part of the Sentencing Reform Act of 1984. It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief. *See, e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying motion for compassionate release because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished. BOP rarely filed motions on an inmate's behalf. As a result, compassionate release was exceedingly rare. *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), Hardy must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13. The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under § 3582. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

**III. COVID-19[1]**

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, ___ F. Supp. 3d ___, 2020 WL 2556496, at *1 (D. Md. May 20, 2020). That crisis is COVID-

[1] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

19.[2] The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic. *Id.*

That said, the COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918. *See United States v. Hernandez*, ___ F. Supp. 3d ___, 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration."). Indeed, the pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, ___ Fed. App'x ___, 2020 WL 3100187 (6th Cir. June 11, 2020). And, the Court must underscore that the virus is highly contagious. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh.

Many people who are stricken with the virus experience only mild or moderate symptoms. But, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted). As of August 3, 2020, COVID-19 has infected about 4.5 million Americans

[2] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *Antietam Battlefield*, 2020 WL at 2556496, at *1 n.1 (citation omitted).

and caused over 150,000 deaths in this country. *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Aug. 3, 2020).

Unfortunately, there is currently no vaccine, cure, "or proven effective treatment" that is available. *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted). Moreover, according to the Centers for Disease Control and Prevention ("CDC"), certain risk factors increase the chance of severe illness. Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system. *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020, the CDC revised its guidance. Then, on July 17, 2020, to reflect the most recently available data, the CDC again revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (July 17, 2020), https://bit.ly/38S4NfY. According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; and Type 2 diabetes.

The CDC has also created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include cerebrovascular disease, hypertension, pregnancy, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, smoking, and Type I diabetes. *See id.* Moderate to severe asthma is an underlying medical condition that was moved to the new category by the CDC; it is now

identified as a condition that "might" put an individual at higher risk for COVID-19 complications. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020). Social distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2. Prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id.*; *see also Cameron*, 2020 WL 2569868, at *1. They are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19. The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be

considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at *2. Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected. *See* ECF 582 at 10-11 (detailing measures that BOP has implemented at FCI Schuylkill). Notably, as of August 3, 2020, there is only one reported infection among the inmates at FCI Schuylkill. *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1. As the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

Moreover, Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). And, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9. The April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

Nevertheless, as with the country as a whole, the virus persists in penal institutions.[3] As of August 3, 2020, the BOP reported that 2,325 inmates and 503 BOP staff currently tested positive for COVID-19; 8,256 inmates and 708 staff have recovered; and 105 inmates and one staff member have died from the virus. *See* https://www.bop.gov/coronavirus/ (last accessed Aug. 3, 2020). *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1.

**IV. Discussion**

Hardy urges the Court to reduce his sentence to time-served under 18 U.S.C. § 3582(c)(1)(A)(i), on the ground that "his vulnerability to COVID-19" due to "numerous medical conditions" constitutes an "extraordinary and compelling" basis for his release. ECF 579 at 1. In particular, Hardy avers that he suffers from "hypertension, obesity, prediabetes, and a longstanding chronic cough—all of which make him particularly susceptible to severe illness from the novel coronavirus." *Id.* at 14; *see* ECF 579-1 (Medical Records).

The government opposes Hardy's Motion at each step of the analysis. First, the government contends that Hardy is ineligible for release because none of his health issues has been identified by the CDC as a risk factor for severe illness from COVID-19 . ECF 582 at 14. The government also asserts that Hardy is ineligible for release because he is a danger to the community. *Id.* at 17. And, the government contends that the § 3553(a) factors militate against reducing Hardy's sentence.

As noted, Hardy is 44-years-old. He suffers from hypertension, obesity, prediabetes, and has a longstanding chronic cough. ECF 579-1. Surprisingly, the government asserts that "[n]one of these issues, individually or collectively, amount to 'extraordinary and compelling reasons.'"

[3] The *New York Times* has reported that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country. Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2.

ECF 582 at 13. According to the government, the CDC does not consider hypertension a risk factor. *Id.* And, it argues that the CDC only considers "severe obesity" to be a risk factor, defined as a BMI above 40, and Hardy's BMI is only 38. *Id.* Moreover, Hardy's dry cough is of no moment, the government posits, because it "is not asthma." *Id.*

The government is incorrect. After the government filed its opposition, the CDC revised its guidance. The CDC now considers obesity with a BMI above 30 to be a risk factor for COVID-19 complications. Hardy was diagnosed with morbid obesity by the BOP Health Services when his sentence began in 2013. Presently, he has a BMI of 38 and has continually suffered from obesity-related edema in his legs, ankles, and feet. *See* ECF 579-1.

In addition, the CDC advises that hypertension increases the risk of severe illness from COVID-19. Hardy has regularly taken blood pressure medication while in the BOP. *See id.* Moreover, the CDC cautions that the "more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16. Here, in addition to obesity and hypertension, Hardy as other comorbidities that may aggravate his vulnerability to COVID-19, including prediabetes and a chronic cough.

Numerous courts have found that, in light of the COVID-19 pandemic, chronic medical conditions, including obesity and hypertension, qualify as a compelling reason for compassionate release. *See United States v. Readus*, No. 16-20827-1, 2020 WL 2572280, at *3 (E.D. Mich. May 21, 2020) ("Courts have found that the combination of prediabetes and obesity have been sufficient to warrant release"); *see also, e.g., United States v. Williams*, PWG-19-134, 2020 WL 3073320 (D. Md. June 10, 2020) (finding obese defendant with a BMI of 32.5 qualified for

compassionate release given COVID-19); *United States v. Hilow*, No. 15-170-JD, 2020 WL 2851086, at *4 (D. N.H. June 2, 2020) (involving asthma, migraines, hypertension, high cholesterol, prediabetes, and borderline obesity); *United States v. Zuckerman*, 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (finding defendant's age, diabetes, hypertension, and obesity satisfied an extraordinary and compelling reason); *United States v. Quintero*, 08-CR-6007L, 2020 WL 2175171, at *1 (W.D.N.Y. May 6, 2020) (finding defendant's diabetes, compromised immune system, obesity, and hypertension satisfied an extraordinary and compelling reason); *United States v. Foreman*, 3:19-CR-62 (VAB), 2020 WL 2315908, at *4 (D. Conn. May 11, 2020) (finding defendant's age, hypertension, and obesity satisfied an extraordinary and compelling reason); *United States v. Ullings*, 1:10-CR-00406, 2020 WL 2394096, at *4 (N.D. Ga. May 12, 2020) (finding defendant's age, hypertension, and obesity satisfied an extraordinary and compelling reason).

In sum, I am satisfied that, given Hardy's various medical conditions, he satisfies the "extraordinary and compelling" prong of the § 3582 analysis. Therefore, I must next consider whether Hardy poses a danger to the community and the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A).

The government maintains that Hardy is a danger to the community because, *inter alia*, he has five prior convictions for controlled substance offenses, and "[d]ealing drugs is dangerous to the community." ECF 582 at 17; *see* ECF 324, ¶¶ 38, 40, 42, 44, 46. Further, the government avers that the serious nature of defendant's underlying offense and the fact that a handgun was recovered from his residence underscore his dangerousness. *Id.* at 18. As to the § 3553(a) factors, the government contends that "eight years in prison is insufficient to account for

[Hardy's] participation in a large-scale, and at times violent, drug distribution conspiracy." *Id.* at 21.

The gravity of the underlying offense cannot be minimized. As I observed at Hardy's sentencing, he committed a "serious crime." ECF 380 at 17.

Hardy's prior record is also noteworthy. Previously, Hardy's most serious State convictions include unlawful discharge of a firearm in 1994, when Hardy was 19 years-old, for which he received a sentence of probation before judgment. ECF 324, ¶ 36. And, when Hardy was 19, he was also convicted of possession of cocaine, for which he received a three-year sentence. *Id.* ¶ 38. In 1996, at the age of 21, he was charged with armed carjacking. *Id.* ¶ 42. However, he was not convicted of that offense. Rather, in 1997 he pleaded guilty to "Felony Possession of Marijuana," for which he received a sentence of five years' incarceration on April 25, 1997. *Id.* He was paroled on July 30, 1999. *Id.* Further, he received a two-year sentence in August 2000. *Id.* ¶ 44. And, in September 2005, he received a four-year sentence for a drug offense, and was released on October 10, 2007. *Id.* ¶ 16. Thus, Hardy has already served a sentence in this case—more than nine years—which is far longer than any prior sentence.

The better indicator of Hardy's continued dangerousness is his behavior for the past nine years, while in BOP custody. His record is exemplary. *See* ECF 579-2 (12/5/2019 Progress Report). In less than five years, Hardy progressed from a medium-security prison to a minimum-security camp. *See* ECF 579-1 at 29. Hardy has strenuously complied with BOP rules; his only disciplinary infraction, "being unsanitary or untidy," occurred more than 3 years ago and did not result in any loss of good time credits. ECF 597-7. Further, Hardy has earned his GED, participated in more than 350 hours of programming, and stayed in constant contact with his family throughout his incarceration. *See* ECF 579-3 (listing Hardy's completed education

courses); ECF 579-4 (letter from Phyllis Hardy, Hardy's mother); ECF 579-5 (letter from Aurtina Lemore, mother of Hardy's child). This record is not indicative of someone who currently presents a danger to society.

A reduction of Hardy's sentence to time-served is consistent with the factors under 18 U.S.C. § 3553(a) factors. To be sure, I stand by my observation at defendant's sentencing that a 16-year term of imprisonment met "every single one of the goals identified by Congress as a purpose of sentencing" and was "appropriate" for Hardy in light of his conduct. ECF 380 at 17. However, Hardy's continual growth while incarcerated warrants recognition under 18 U.S.C. § 3553(a).

Hardy has served about 65 percent of his sentence, exclusive of good conduct credit of 54 days per year. As a result, he has a projected release date for September 2023, and the BOP could release him months before then to a residential reentry placement. And, his incarceration in the midst of a global pandemic has "sufficiently increased the severity of the sentence beyond what was originally anticipated such that the purposes of sentencing are fully met even with the proposed reduction." *United States v. Green*, TDC-10-761, 2020 WL 2992855, at *4 (D. Md. June 4, 2020).

Accordingly, I find that the factors under 18 U.S.C. § 3553(a) weigh in favor of reducing Hardy's sentence to time served plus fourteen days, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), with the added requirement of one year of home confinement as a condition of supervised release. During the 14-day period, appropriate travel arrangements shall be made to ensure the defendant's safe release, and to verify the adequacy of his release plan.

## V. Conclusion

For the forgoing reasons, I shall grant the Motion (ECF 172). Hardy's sentence shall be reduced to time served plus fourteen days. The terms and conditions of supervised release to which Hardy was originally sentenced will remain in place, with the added condition that he will be placed on home confinement for the first year of his supervised release, subject to the usual terms and conditions. In addition, he will be required to quarantine himself for fourteen days once he reaches his place of abode. And, he shall comply with all directives of federal, state, and local governments related to COVID-19.

An Order follows. And, a revised Judgment and Commitment Order shall issue.

Date: August 3, 2020

/s/
Ellen Lipton Hollander
United States District Judge